IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION



| | |
|---|---|
| DONALD RUDOLPH STOCK,<br><br>Petitioner,<br><br>vs.<br><br>MARTIN FRINK; ATTORNEY GENERAL OF THE STATE OF MONTANA,<br><br>Respondents. | CV 14–25–H–DLC–JTJ<br><br>ORDER |

United States Magistrate Judge John Johnston entered his Order, Findings and Recommendations in this matter on February 2, 2016, recommending dismissal and denial of specific portions of Petitioner Donald Rudolph Stock's ("Stock") application for writ of habeas corpus under 28 U.S.C. § 2254. Stock, represented by counsel, timely filed objections and is therefore entitled to de novo review of those Findings and Recommendations to which he specifically objects. 28 U.S.C. § 636(b)(1)(C). This Court reviews for clear error those findings and recommendations to which no party objects. *See McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 149 (1985). "Clear error exists if the Court is left with a

definite and firm conviction that a mistake has been committed." *United States v. Syrax*, 235 F.3d 422, 427 (9th Cir. 2000).

Before turning to Stock's objections, the Court will briefly summarize the Findings and Recommendations. After discussing the background and procedural history of Stock's underlying case and subsequent appeals, Judge Johnston conducted an independent review of Stock's petition and found that he had alleged two general claims: (1) ineffective assistance of postconviction counsel ("Claim 1"); and (2) ineffective assistance of trial counsel ("Claim 2").

Judge Johnston then partitioned Stock's second claim of ineffective assistance of his trial counsel into nine specific claims: (1) failure to object to admission of pornographic image testimony during trial ("Claim 2(a)"); (2) failure to obtain a computer expert ("Claim 2(b)"); (3) failure to object to State's DNA comments in closing ("Claim 2(c)"); (4) failure to preserve objection to pornographic images and/or computer usage for appeal ("Claim 2(d)"); (5) failure to retain a DNA expert to clarify and explain the DNA evidence ("Claim 2(e)"); (6) conflict of interest with State's expert witness that resulted in trial counsel's failure to perform an effective cross-examination, presentation of damaging testimony, and failure to perform an adequate pretrial investigation into medical issues ("Claim 2(f)"); (7) failure to present testimony from medical expert that the

sexual assault described by K.S. would have significant medical consequences ("Claim 2(g)"); (8) failure to object to the joinder of charges involving E.S. and K.S. ("Claim 2(h)"); and (9) failure to object to various irrelevant and prejudicial evidence ("Claim 2(i)"). (Doc. 17 at 10–11).

After evaluating these claims under the standard for ineffective assistance as detailed in *Strickland v. Washington*, 466 U.S. 668 (1984), Judge Johnston recommends that the majority of the above claims be dismissed or denied. Specifically, the Findings and Recommendations found that Claim 1 should be denied because prisoners do not have a constitutional right to counsel in postconviction proceedings, and thus, Stock's first claim was not cognizable under habeas law. Next, Judge Johnston recommends that Claim 2(i) be denied for failing to specify the underlying facts supporting this contention. As a result, it did not state a claim upon which relief could be granted. The Findings and Recommendations also recommend that Claims 2(a), (b), and (c) be denied because Stock failed to show that the Montana Supreme Court's decision, which addressed these claims, was contrary to established federal law or an unreasonable determination of the facts under *Strickland*. Judge Johnston next found that Claims 2(d), (f), and (h) were procedurally defaulted because Stock failed to demonstrate a substantial claim. Judge Johnston recommends that this claim be

dismissed with prejudice. Lastly, the Findings and Recommendations found that Claims 2(e) and (g) have possible merit and Stock should be allowed to proceed further on these two claims.

Turning to the Findings and Recommendations, Stock contends that Judge Johnston's analysis is deficient in two general ways. First, Stock argues that Claim 1 states a cognizable federal claim because the Montana Supreme Court failed to follow established state rules and procedures, which resulted in a denial of an established liberty interest under state law and due process under federal law. Second, Stock contends that Judge Johnston erred by recommending to dismiss portions of Claim 2. Stock maintains that he has presented one, unified claim of ineffective assistance of trial counsel and the Court must analyze the errors of trial counsel cumulatively, not in isolation. As discussed below, the Court disagrees with Stock's arguments and will adopt the Findings and Recommendations in full.

## I. Ineffective Assistance of Postconviction Counsel

Stock maintains that continued representation of his trial counsel, Chad Wright, during his post conviction proceedings created a conflict of interest which resulted in a violation of his due process rights. Judge Johnston found that a habeas claim is only cognizable if a petitioner "is in custody in violation of the

Constitution or laws or treaties of the United States." (Doc. 17 at 13 (quoting 28 U.S.C. § 2254(a)).) Because prisoners do not "have a constitutional right to counsel when mounting collateral attacks upon their convictions," the Findings and Recommendations found that Stock's first claim must fail when applied against § 2254(a). (Doc. 17 at 13 (quoting *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).[1] Stock contends that this analysis fails to take into account that pursuant to Montana law, "individuals may be entitled to the appointment of counsel in certain circumstances." (Doc. 22 at 4 (citing to Mont. Code. Ann. § 46–8–104).) Appointment of counsel, Stock maintains, thus represents an established liberty interest under Montana law. As such, the State's failure to remedy the conflict of interest created by trial counsel's continued representation in the postconviction proceedings resulted in a due process violation. The Court disagrees.

Stock is correct that in certain circumstances, "[a] liberty interest may arise from . . . an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citing *Wolff v. McDonnell*, 418

---

[1] Stock suggests that the United States Supreme Court's decisions in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), call this statement of the law into question. The Court has reviewed these cases and agrees with Judge Johnston that they do not stand for the proposition that prisoners are entitled to counsel during their post conviction proceedings. *See Martinez*, 132 S. Ct. at 1315 (declining to address whether the right to counsel in a collateral proceeding "exists as a constitutional matter").

U.S. 539, 556–558 (1974)). However, courts that have examined whether a liberty interest is created by state law have focused on the plain language of the state statue or policy. *See Bd. of Pardons v. Allen*, 482 U.S. 369, 376–377 (1987) (examining the explicit language of a Montana statute in order to determine if a liberty interest was created under state law). In particular, the question of whether a liberty interest is created under state law is determined by "explicitly mandatory language" in the statutes themselves. *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 463 (1989) (finding that a state liberty interest was not created because the statute contained nonmandatory language, i.e., "may"); *see also Allen*, 482 U.S. at 377–381 (liberty interest created by mandatory language of statute, i.e., "shall").

Here, Stock contends that Montana Code Annotated § 46–8–104, which establishes procedures for the assignment of counsel after trial, creates such a liberty interest. However, a plain review of this statute reveals that assignment of counsel following trial is permissive, not mandatory. *See* Mont. Code. Ann. § 46–8–104(1) ("Any court of record *may* order the office of state public defender, provided for in 47-1-201, to assign counsel . . . .") (emphasis added). Thus, because Montana courts retain the discretion whether to appoint postconviction counsel, there is no state-created liberty interest under the statute. *See Swearingen*

*v. Montana*, 18 P.3d 998, 1000 (Mont. 2001) (referring to § 46–8–104 as "discretionary"). As such, the Court will adopt the recommendation to dismiss Count 1.

## II. Ineffective Assistance of Trial Counsel

### A. Claims 2(a), (b), and (c)

Stock next argues that the Findings and Recommendations, as well as the Montana Supreme Court, erred by reviewing his second claim in a segregated fashion. Stock suggests that his trial counsel made numerous errors and these errors must be reviewed cumulatively. As a result of Montana Supreme Court's non-cumulative analysis, Stock contends that the decision was "contrary to" or an "unreasonable application" of *Strickland*, and should not be afforded any deference under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA thus imposes a highly deferential standard for evaluating state-court rulings . . . and demands that state-court decisions be given the benefit of the doubt.") (citations and quotation marks omitted). As such, Stock asserts that this Court must conduct a de novo review of the Montana Supreme Court's decision. Again, the Court disagrees with Stock's argument.

As explained by the United States Supreme Court, "an unreasonable

application of federal law is different from an incorrect application of federal law." *Id.* (quoting *Williams v. Taylor*, 529 U.S. 362, 410 (2000)). As such, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* (quoting *Williams*, 529 U.S. at 411). Rather, the application of federal law must be "objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

Turning to Stock's argument, the Court agrees that "a court may find unfairness—and thus prejudice—from the totality of counsel's errors and omissions." *United States v. Tucker*, 716 F.2d 576, 595 (9th Cir. 1983) (citing *Ewing v. Williams*, 596 F.2d 391, 396 (9th Cir. 1979); *see also Harris v. Wood*, 64 F.3d 1432, 1438 (9th Cir. 1995) ("We have previously recognized that 'prejudice may result from the cumulative impact of multiple deficiencies.'"). However, in the underlying decision, the Montana Supreme Court found that Stock was not

entitled to relief on Claims 2(a), (b), and (c)[2] because he could not show he was prejudiced by these alleged errors. *Stock v. Montana*, 318 P.3d 1059–1061 (Mont. 2014). Reviewing this decision, the Court disagrees with Stock that the Montana Supreme Court failed to review trial counsel's alleged errors cumulatively. Instead, is clear that the Court reviewed each of Stock's arguments for relief individually, found that they did not prejudice Stock, and thus were not errors that required cumulative review. Put another way, this is not the case where a court reviewed each claim put forth by a habeas petitioner, found that each claim had merit and could thus be viewed as an individual error, but nonetheless ignored the cumulative impact of these errors because the court found that each individual error, by itself, did not rise to a level which prejudiced the defense. *See* Rachel A. Van Cleave, *When Is an Error Not an "Error"? Habeas Corpus and Cumulative Error Analysis*, 46 Baylor L. Rev. 59, 61 (1994) ("A majority of federal courts entertain habeas corpus petitions requesting relief based on the 'cumulative effect' of several errors, each of which, when considered alone, would not warrant habeas relief, but when taken together indicate that the petitioner has suffered a due process violation.").

---

[2] As mentioned above, these claims are: (1) failure to object to admission of pornographic image testimony during trial; (2) failure to obtain a computer expert; and (3) failure to object to State's DNA comments in closing.

Further, Stock's contention that the court did not consider the totality of the underlying proceeding is called into question by the Montana Supreme Court's discussion of the state district court's review of the record. *See Stock*, 318 P.3d at 1059 ("Stock's assertion that the District Court's ruling was not based on the totality of the evidence presented is simply unsupported. The District Court's Order cites to the record extensively, evidencing that it did indeed consider the totality of the evidence presented at trial. Therefore, the District Court did not misapply the *Strickland* test."). As such, the Court will overrule Stock's objection as to Claims 2(a), (b), and (c).

**B. Claims 2(d), (f), and (h)**

Stock's arguments concerning Claims 2(d), (f), and (h)[3] must also fail. Applying *Martinez v. Ryan*, 132 S. Ct. 1309, 1318 (2012), Judge Johnston found that Stock had failed to demonstrate that these claims had merit and thus could not excuse the procedural default. Stock, once again, argues that the Findings and Recommendations erred by viewing these alleged attorney deficiencies in isolation. The Court disagrees.

---

[3] As provided above, these claims are: (1) failure to preserve objection to pornographic images and/or computer usage for appeal; (2) conflict of interest with State's expert witness that resulted in trial counsel's failure to perform an effective cross-examination, presentation of damaging testimony, and failure to perform an adequate pretrial investigation into medical issues; and (3) failure to object to the joinder of charges involving E.S. and K.S.

-10-

As stated above, Stock is correct that a court may find prejudice "from the totality of counsel's errors and omissions." *Tucker*, 716 F.2d at 595 (citations omitted); see also *Ewing v. Williams*, 596 F.2d 391, 395–396 (9th Cir. 1979) (stating that a court's finding of prejudice "may either be 'cumulative' or focus on one discrete blunder in itself prejudicial"). However, Stock's argument attempts to hold the Findings and Recommendations to a standard that is not suggested by the authority cited in his brief. Indeed, none of the cases cited by Stock hold that a court cannot dismiss portions of a claim it deems to be without merit. To hold otherwise would hamstring the ability of a court to efficiently manage a case by partitioning frivolous arguments from ones that may have merit.

Further, the alleged errors committed by Stock's attorney pale in comparison to cases where cumulative error was found. *E.g. Harris*, 64 F.3d at 1435–1439 (Cumulative error found when counsel: (1) interviewed only three of 32 potential witnesses in the case; (2) met with petitioner pretrial for a total of one hour and 48 minutes; (3) failed to obtain a mental evaluation of petitioner; (4) failed to obtain an independent evaluation of both the ballistic and forensic evidence; (5) failed to challenge the admissibility of petitioner's statement made to the police regarding the murder; (5) failed to be present during voir dire by leaving an inexperienced and unprepared associate to conduct it; (6) failed to object to the

admission of evidence, including petitioner's prior convictions and testimony regarding a list of persons he intended to kill; (7) failed to propose jury instructions; (8) failed to raise or preserve meritorious issues for appellate proceedings; and (9) presented a closing argument where he referred to petitioner as a liar and a thief, among other insults). Here, in contrast, Stock's attorney filed copious substantive pretrial motions in defense of his client. (Doc. 17 at 32–33.) Thus, at this point,[4] the Court is not convinced that the performance of Stock's counsel had the effect of depriving Stock of a fair trial. Stock's objections to Claims 2(d), (f), and (h) are overruled.

**C. Claim 2(i)**

Lastly, Stock also objects to Judge Johnston's recommendation to dismiss Claim 2(i).[5] Stock contends that, in addition to the erroneous "balkanized review

---

[4] The Court agrees with Judge Johnston that dismissal of Claims 2(e) (failure to retain DNA expert) and 2(g) (failure present testimony from medical expert) is not appropriate at this time. Further discovery is needed in order to determine if these claims have merit.

[5] This claim is centered on counsel's alleged failure to object to irrelevant and prejudicial evidence, including: (1) State referring to E.S. and K.S. as "victims"; (2) State presenting irrelevant and prejudicial testimony regarding the Lewis and Clark multidisciplinary team; (3) State presenting testimony that E.S. and K.S. suffered from posttraumatic stress disorder and presuming that the condition was caused by Stock; (4) State presenting prejudicial testimony to bolster credibility of complaining witnesses; (5) State presenting prejudicial and irrelevant testimony relating to Stock's character, personality, activities, and reasons the witnesses did not like Stock; (6) State presenting irrelevant and prejudicial testimony regarding Stock's religious beliefs; (7) State presenting evidence that was prejudicial only to bolster the credibility of the State's own witnesses; and (8) State presenting other evidence that was unfairly prejudicial or only served to generate sympathy for E.S. and K.S.

process" described in the previous section,[6] the Findings and Recommendations erred by recommending dismissal of this claim before further discovery could be conducted to flesh it out. (Doc. 22 at 16–17.) Stock maintains that deposition of Stock's counsel is required prior to dismissal. Again, the Court disagrees.

As discussed by Judge Johnston, Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts require a habeas petition to "'specify all the grounds for relief available to the petitioner' and 'state the facts supporting each ground.'" *Mayle v. Felix*, 545 U.S. 644, 655 (2005). Having reviewed the petition, the Court agrees that these claims fail to specify facts supporting each contention and fail to explain how these alleged errors prejudiced Stock. Ultimately, these allegations are conclusory and must be dismissed. *Campbell v. Wood*, 18 F.3d 662, 679 (9th Cir. 1994) ("An evidentiary hearing is not required on allegations that are 'conclusory and wholly devoid of specifics.'") (citing *Boehme v. Maxwell*, 423 F.2d 1056, 1058 (9th Cir. 1970). Accordingly, Stock's objection to the recommended dismissal of Claim 2(i) is overruled.

IT IS ORDERED that:

(1) Judge Johnston's Findings and Recommendations (Doc. 17) are

---

[6] The overrules Stock's objection concerning the review process conducted by Judge Johnston for the reasons described in section II. B.

ADOPTED IN FULL.

(2) Claim 1 and Claim 2(i) are DENIED for lack of merit and for failure to state a claim under 28 U.S.C. § 2254(a);

(3) Claims 2(a), (b), and (c) are DENIED because they do not survive deferential review under AEDPA;

(4) Claims 2(d), (f), and (h) are DISMISSED WITH PREJUDICE as procedurally defaulted; and

(5) Stock is allowed to PROCEED on Claims 2(e) and (g).

DATED this 5th day of August, 2016.

Dana L. Christensen, Chief Judge
United States District Court